■ WANDA R. FORMEY, Respondent, v MICHAEL E. JONES et al., Appellants. [758 NYS2d 13] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered November 1, 2001, which, after a nonjury trial, ruled in plaintiff's favor and ordered specific performance of a contract for the sale of real property, unanimously reversed, on the law, without costs or disbursements, the judgment vacated, specific performance denied, and the matter remanded for further proceedings.

On March 20, 1998, plaintiff, as buyer, and defendant Jones,* as seller, entered into the contract at issue for the sale of property located at 527 Manhattan Avenue in Manhattan. Pursuant to the contract, the closing was to take place on April 30, 1998 and the premises were to be delivered "vacant and free of leases or tenancies." The contract gave the seller the right to cancel if he was unable to comply with this requirement and the buyer was unwilling to waive it without any abatement of the purchase price. If the contract were canceled, it would "terminate" and neither party would have any rights against the other except for the return of the buyer's down payment and the reimbursement of certain examination of title costs. The contract permitted the seller to adjourn the closing to cure any defects which prevented transfer of title and allowed either party to cancel if the seller was unable to cure the defects and the buyer was unwilling to waive them and accept title without abatement of the purchase price. A rider to the contract provided that if the seller was unable to accomplish the removal of the one remaining tenant by the closing date, the deadline for the removal would be extended until June 30, 1998.

By letter to the seller's attorney dated July 10, the buyer's attorney stated that the buyer was ready to close "provided * * * that the tenant no longer reside[s] at the premises." The letter further stated that if the seller "does not have the cash to remove the tenant [the seller] should notify [the buyer]" and the buyer "may be willing to purchase the property with the tenant provided there is a reasonable reduction in the purchase price." The letter concluded: "Nevertheless, if we do not have a definite date by July 16, 1998, as to when the tenant will move, then my client will treat the seller's inability to convey title as a breach of contract and she will be seeking a return of her down payment together with all associated fees."

Apparently having received no response to the July 10 letter, the buyer's counsel wrote to the seller's counsel on August 3 that "it appears that [the seller] cannot comply with the terms of the contract by providing a vacant * * * premises. Accordingly, the contract has been breached. I will speak with [the buyer] upon her return to discuss how she would like to proceed with this matter. The last time I spoke with her she indicated that she would be expecting at least a refund of her down payment plus expenses related to obtaining the mortgage."

---

* At the time the contract was entered into, defendant Jones was the sole owner of the property. Defendant Hunter thereafter acquired an interest in the property and was joined as a defendant.

By letter dated August 26, 1998, the seller's counsel stated that the contract of sale has expired by its terms and that, despite the seller's efforts, he "cannot deliver the premises free and clear of tenancies." Therefore, counsel stated, the seller "is hereby formally canceling the contract" and returning the buyer's $7,000 down payment. The buyer's counsel rejected this purported cancellation, advising the seller's counsel, in a letter dated August 31, that the buyer had decided to extend the seller's time to remove the tenant until the end of September 1998. By letter dated September 2, 1998, the seller's counsel reiterated its position that the contract had been canceled.

The buyer thereafter commenced this action seeking specific performance. On September 10, 2001, following a nonjury trial, the court granted plaintiff specific performance, holding that defendant's purported cancellation of the contract on August 26, 1998 was ineffective. The court stated that while defendant may have had the right to cancel on the basis of the July 10 letter, since plaintiff's counsel stated in the second letter that she was going to discuss the matter with her client and, thereafter, did not indicate what her client had decided, defendant no longer had such right. Since we are persuaded that defendant's cancellation of the contract on August 26 was effective, we reverse.

The language in the July 10 letter indicating plaintiff's willingness to consider purchasing the property with the tenant in possession for a reduction of the purchase price must be read in light of the unequivocal statement that if, by July 16, 1998, plaintiff did not "have a definite date * * * as to when the tenant [would] move, [plaintiff would] treat the seller's inability to convey title as a breach of contract." And the statement in the August 3 letter that plaintiff's counsel would "speak with [plaintiff] upon her return to discuss how she would like to proceed with this matter" does not constitute a retreat from this position; indeed, the letter expressly provided that "the contract has been breached." The reference to "how [plaintiff] would like to proceed," read in context, can be construed as relating only to the remedy plaintiff would seek. Nor can there be any claim that these letters were open-ended as to whether plaintiff would be willing to take the premises even with the existing tenancy. Despite the discussion in the July 10 letter of the possibility that, for a reduced purchase price, plaintiff might be willing to purchase the property with the tenant remaining in possession, it is clear that plaintiff would consider defendant in breach if the parties did not have

a definite date for the tenant's departure by July 16. And there was no suggestion whatsoever in the August 3 letter of plaintiff's willingness, under any circumstances, to waive the existing tenancy.

Nor was plaintiff's counsel's letter dated August 31, 1998, which purported to extend defendant's time to effectuate the departure of the tenant, effective to do so, since the prior communications made clear that plaintiff considered defendant in breach and that defendant had already canceled the contract. It is also worth noting that the August 31 letter did not repeat plaintiff's suggestion that she might be willing to purchase the property for a reduced price with the tenant still in possession. Concur—Tom, J.P., Andrias, Sullivan, Friedman and Marlow, JJ.